This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BEVERLY GARCIA,**

Petitioner-Appellant,

**v.**                                                            **No. 31,954**

**ANTHONY GARCIA,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Priscilla A. Shannon
Aztec, NM

for Appellant

Anthony Garcia
Farmington, NM

Pro Se Appellee

## MEMORANDUM OPINION

**VIGIL, Judge.**

Petitioner-Appellant, Beverly Garcia (Wife) appeals from the district court's order denying her motion to modify spousal support. [RP 138]  The calendar notice

proposed summary affirmance. [Ct. App. File, CN1] Wife has filed a memorandum in opposition, which we have duly considered. [Ct. App. File, MIO] Unpersuaded, however, we affirm.

**DISCUSSION**

Wife contends that the district court erred as follows: (1) in its determination of spousal support by not considering the totality of the circumstances and relying exclusively on the length of the marriage and not considering all the factors in the statute; (2) in stating that presumption of alimony exists after ten (10) years when that length of time is not set forth in the statute but does appear in the guidelines; (3) in awarding temporary spousal support when it should have awarded permanent spousal support for an indefinite duration; (4) in not considering the case law that states that an award of alimony must be based on a showing of need by the dependent spouse and the ability of the supporting spouse to pay; (5) in not finding a change of circumstance at the modification hearing; and (6) in failing to consider that Husband took Wife as she was when they got married, and now she cannot be left to fend for herself on public assistance when he can afford to pay alimony. [DS 6-9]

NMSA 1978, Section 40-4-7(B)(2)(a) (1997) provides that the district court may:

> (a) modify and change any order in respect to spousal support awarded pursuant to the provisions of Subparagraph (a), (b) or

2

(c) of Paragraph (1) of this subsection whenever the circumstances render such change proper[.]

Section 40-4-7(B)(1) (a) - (c) provides that

    B.    On final hearing, the court:

    (1)    may allow either party such a reasonable portion of the spouse's property or such a reasonable sum of money to be paid by either spouse either in a single sum or in installments, as spousal support as under the circumstances of the case may seem just and proper, including a court award of:

    (a)    rehabilitative spousal support that provides the receiving spouse with education, training, work experience or other forms of rehabilitation that increases the receiving spouse's ability to earn income and become self-supporting. The court may include a specific rehabilitation plan with its award of rehabilitative spousal support and may condition continuation of the support upon compliance with that plan;

    (b)    transitional spousal support to supplement the income of the receiving spouse for a limited period of time; provided that the period shall be clearly stated in the court's final order; [and]

    (c)    spousal support for an indefinite duration[.]

Recently, we noted that Section 40-4-7(B)(2) expressly limits the district court's jurisdiction to modify spousal support "whenever the circumstances render such change proper" to those types of spousal support listed in Section 40-4-7(B)(1) (a) - (c), i.e., rehabilitative, transitional, and support for an indefinite duration. *Pruyn v. Lam*, 2009-NMCA-103, ¶ 14, 147 N.M. 39, 216 P.3d 804. In this case, Wife seeks

modification of the rehabilitative spousal support ordered under the final decree, on the grounds that "circumstances render such change proper."

The parties were married on March 20, 2004. [DS 2] Prior to the marriage Wife was diagnosed with multiple sclerosis. [Id.] The marriage lasted less than six years. [Id.] Wife filed for dissolution on November 24, 2009. [Id.] Interim spousal support from Husband to Wife was set at $700.00 per month beginning in January 2010, with a December 2009 payment of $350. [Id.] The final decree of dissolution and division of assets and debts were filed on July 20, 2010. [RP 66]

The final decree provides that Wife receives rehabilitative spousal support from Husband in the amount of $150.00 per month for two years; Wife receives an equalization payment from Husband in the amount of $5,458.74 on a monthly basis over eighteen months or in a lump sum payment; the assets and debts of the parties are divided in accordance with a property and debt worksheet attached to the final decree; and each party receives one-half of their community interest during the time of marriage in the PNM Retirement Savings Plan-09070 (the 401(k) plan), and one half of their community interest during the time of marriage in the PNM Pension Plan (the pension plan), pursuant to Qualified Domestic Relations Orders. [RP 66-67] We use the terms "401(k) plan" and "pension plan" as they are defined in the letter from the PNM pension plan administrator. [*See* RP 105] Wife's attorney refers to the pension

plan, which is the plan that Wife has no interest in, as the "Savings Plan" in the memorandum in opposition. [See MIO 3, first full paragraph and thereafter]]. The parties did not appeal from the final decree.

About fifteen months after the final decree was entered, on November 9, 2011, Wife filed a motion to modify spousal support. [RP 101] Wife alleged a substantial change in circumstances because she had received notice that she had no community interest in, and therefore was not entitled to, any benefits under the pension plan, and therefore Wife would "experience a shortfall in the amount of income ordered by the Court [pursuant to the final decree]." [Id.] On April 27, 2011, the parties' attorneys had received notice from the pension plan that Wife had no community property interest in that plan because the plan "froze" on December 31, 1997; Husband was able to accrue additional plan benefits only until November 1, 2002; and the parties were not married until March 20, 2004. [RP 104] The letter did not concern Wife's interest in the 401(k) plan. [RP 105] Wife had already qualified for social security disability benefits in the amount of $1,361.50 per month before deductions and $1,232.90 thereafter; under the final decree Wife was receiving $150 per month for two years in rehabilitative alimony; and Wife received $30,606.37 from Husband's 401(k) plan in January 2011. [RP 126, 116]

At the hearing on Wife's motion, Husband argued that no modification was warranted because Wife had received $30,606.37 from the 401(k) plan and was receiving two years of rehabilitative alimony. [RP 135] Husband pointed out that he had done nothing to keep Wife from getting an interest in the pension plan, and that there had been a property equalization to Wife. [Id.] Wife argued that, although the parties were married only six years, they had lived together for five years before that, Husband knew Wife was ill when they got married, and therefore Husband had a continuing duty to support her. [Id.] At the motion hearing, Wife argued that she had objected to the two years of $150 per month in spousal support set forth in the final decree, but had accepted it only because she relied on the income from Husband's 401(k) plan and the pension plan. [MIO 4] Wife also argued that in addition to the loss of the expected income from the pension plan, her expenses had increased substantially and her social security income had decreased. [Id.] Wife further argued that the amount of rehabilitative alimony and its term should be increased because her need was great and Husband had the ability to pay. [Id.]

As summarized in the tape log of the hearing, the district court noted that the "facts of this case are very sad," but that alimony is determined by certain factors; there had been a form of rehabilitative income for two years; there were funds distributed to Wife under the 401(k) plan; and there had been an equitable property

6

distribution. The district court also pointed out that the marriage had lasted about six years, i.e., "so [the duration of the marriage is] barely to the point where you award [spousal support] at all." [RP 135, 1:47:38 PM] The district court concluded that nothing had really changed from the original award and that it was not appropriate to change it. [Id.] We agree.

Our review of the record does not indicate that the district court exclusively considered the relatively short duration of the marriage in making the award in the final decree or in currently refusing to modify it. Instead, the district court considered the totality of the circumstances in accordance with the authorities Wife cites under Issue 4. [MIO 10] In particular, the memorandum confirms that Husband's temporary alimony payment ($700 per month) and the two-year rehabilitative alimony payment ($150 per month) under the final decree, had been calculated based on the amount of Wife's monthly social security income and Husband's possible disability income and relatively greater gross monthly income at that time. [MIO 3; RP 28-29, 43] Thus, Wife's income situation, her rehabilitative needs, and the income disparity between the parties had already been taken into account when the final decree was entered. In addition, Wife was already diagnosed with her illness prior to dissolution, and therefore, the final decree was entered into taking her illness and rehabilitative needs into account.

The final decree specifically states that Wife is entitled to one-half community property interest in the pension plan and the 401(k) plan. As it turned out, Wife did have a $30,606 interest in the 401(k) plan, but she had no interest in the pension plan, because the parties were married in 2004, long after the pension plan was frozen (1997) and Husband's entitlement to benefits had expired (2002). We are not persuaded that *Rhoades v. Rhoades*, 2004-NMCA-020, 135 N.M. 122, 85 P.3d 246 cited by Wife in her memorandum [MIO 7], requires us to decide otherwise. In *Rhoades*, we affirmed the district court's decision to award spousal support for the first time in a situation where the parties were married for about twenty-two years, no spousal support was awarded in the final decree, and the husband's intention to convert all the retirement benefit into disability pay in the near future would have effectively eliminated the wife's award of her share of the husband's retirement benefit, which was the only significant asset of the marriage. *Rhoades*, 2004-NMCA-020, ¶ 15. The circumstances of this case are different. The parties in this case were married only six years; Wife's illness, and Husband and Wife's relative incomes were already known at the time the final decree was entered; and the pension plan, in which it was later determined that Wife had no interest, was not the only significant asset of the parties' marriage. The fact that Wife has no interest in the pension plan is not the result of any secrecy, fraud, duress, or misrepresentation. In summary, we

8

remain of the view that Wife's arguments below and on appeal essentially focus on and challenge the terms of the final decree entered on July 20, 2010. Wife did not appeal from the final decree and now regrets its terms. Under the final decree, Wife received rehabilitative alimony at the rate of $150 per month for two years. The relative disparity in the parties' incomes was already known when the final decree was entered. Wife received an equalization payment pursuant to the property distribution, and she received one-half community interest in Husband's 401(k) plan. Wife's illness and rehabilitative needs were already known at that time the final decree was entered, and the fact that Wife had no one-half community property interest in the pension plan could have been known at that time. There are no circumstances warranting a modification of the final decree.

**CONCLUSION**

We affirm the district court's order denying Wife's motion to modify spousal support.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

9

**CELIA FOY CASTILLO, Judge**


_____
**J. MILES HANISEE, Judge**